OPINION OF THE COURT
Karen S. Burstein, J.
On July 15, 1991, this court granted, from the Bench, *731 respondent’s oral motion to dismiss the instant proceeding for failure to conform with the requirements of Family Court Act § 350.1. The court found then, and reasserts in writing here, that the first adjournment of the dispositional hearing for 60 days and the second for 38 constituted unwaivable jurisdictional defects. The court believes its decision is compelled by the legislative architecture of Family Court Act article 3 for which the Court of Appeals, in a series of recent opinions, has provided increasingly detailed schematics. (Matter of Frank C., 70 NY2d 408 [1987]; Matter of Randy K., 77 NY2d 398 [1991]; Matter of Detrece H., 78 NY2d 107.)
The ruling principal of this architecture is adherence to the plain meaning of the statutory language. There is little, if any, room for judicial embellishment. The whole of article 3 is dedicated to the belief that where children are concerned, time and certainty are truly of the essence. But children cannot be expected to know this; it is on the adult system that the full burden of vindicating that belief falls.[1] If, as here, the court and parties go past the days allotted for action, without waiver or demonstrating good cause or special circumstances, the whole petition must fail.
Family Court Act § 350.1 provides that, unless a respondent is in detention, a dispositional hearing must commence within 50 days. (Family Ct Act § 350.1 [2].) The court may adjourn the hearing past 50 days either "on its own [or presentment agency’s] motion * * * for good cause shown for not more than ten days” (Family Ct Act § 350.1 [3] [a] [emphasis added]), or "on motion by the respondent for good cause shown for not more than thirty days.” (Family Ct Act § 350.1 [3] [b] [emphasis added].) All adjournments must be supported by a statement on the record of the reasons underpinning them. (Family Ct Act § 350.1 [4].) Finally, "[successive motions to adjourn the hearing beyond the limits [set out above] shall not be granted in the absence of a showing, on the record, of special circumstances; special circumstances shall not include *732 calendar congestion or the status of the court’s docket or backlog.” (Family Ct Act § 350.1 [5] [emphasis added].)
The divergence of the facts in this case from the above-stated rules is patent. On March 21st, the respondent admitted to violating Penal Law § 220.03, an A misdemeanor. An investigation and report (I&R) by Probation and a mental health study (MHS) by the court’s Mental Health Services were ordered and the case set down for a dispositional hearing on May 20 (a period of 60 days). In the interim, respondent and his mother failed to appear for their I&R and MHS appointments. Consequently, on May 20th, the matter was adjourned to June 27th (a period of 38 days) and new appointments were scheduled.
On June 27th, the I&R and MHS having been completed, and an exploration of placement (EOP) ordered, the Law Guardian sought the court’s permission to send the case to Family Ties (a placement-prevention service). The court agreed. On July 8th (11 days later), the control date for a Family Ties decision, that program reported it would not take the respondent. However, Probation, undoutedly in the interest of its depleted resources, had not begun the EOP. At this point, Law Guardian moved under Family Court Act § 350.1 for dismissal. Although the Judge’s endorsement contained no discussion of waiver of time limits or of good cause or special circumstances, both presentment agency and the Judge believed the full record would reflect such concerns. Therefore, the motion was denied, with leave to reargue if transcripts proved the court wrong.
On July 15, the next return date, 116 days after fact finding, when Probation had still not finished its EOP, the Law Guardian asserted without contradiction that minutes from the May 21st hearing demonstrated that respondent’s counsel had not explicitly waived the 50 days, nor had there been any colloquy on good cause for extending the period, as happened, by 10 more days.
Responding to the Law Guardian’s motion, the court speculated that the time frame implicitly reflected its knowledge that resources at MHS are so strained that it routinely takes 7 to 8 weeks to complete the process. However, as the court conceded, even assuming arguendo that MHS scheduling problems constitute good cause for a first adjournment (escaping *733 the prohibitory language of Family Ct Act § 350.1 [5]),[2] a Judge may not, under Family Court Act § 350.1 (4) leave unspoken the reasons for any adjournment past the initial statutory limit.
The Law Guardian was not able to secure the transcript governing the next adjournment; however, she did note that it was for 38 days. Again, assuming arguendo that respondent’s failure to keep appointments constituted special circumstances, the presentment agency does not claim that such special circumstances were adduced on the record.
To overcome the above infirmities, Corporation Counsel asserts a fundamental difference between the two prongs of the bifurcated hearing scheme under Family Court Act article 3. Specifically, presentment agency argues that, for several reasons, dispositional time requirements need not be as strictly construed as those governing fact finding. First, the term "speedy trial” only applies to fact finding. (Family Ct Act § 352.1.) Moreover, the rules of evidence and the burden of proof on disposition are less rigorous than what fact finding demands. Finally, before a fact-finding proceeding concludes, the presumption of innocence attaches; after, the respondent is aware that he or she has been adjudged, through trial or by admission, responsible for an act which would be a crime if committed by an adult. Given all of this, presentment agency essentially claims that dispositional time limits must be seen as elastic and technical, rather than jurisdictional, in nature; extending them as possible for any rational reason and such reason can be retroactively imputed.
Unfortunately, the cases upon which presentment agency relies no longer constitute good law. (Matter of Gregory C., 131 Misc 2d 685, 686 [Fam Ct, Westchester County 1986], was decided before Matter of Frank C. 70 NY2d 408 [1987], supra; Matter of David R., 150 AD2d 161 [1st Dept 1989], before Matter of Randy K., 77 NY2d 398 [1991], supra.) Since Frank C., the Court of Appeals has consistently stressed the impor *734 tance of punctilious attention to the letter of protections available throughout the entire juvenile delinquent adjudication process. The commands of Family Court Act § 350.1 are, like those of Family Court Act § 340.1, framed in mandatory, not precatory terms; as well, Family Court Act § 350.1 (5) is, with the exception of the phrase "beyond the limits enumerated in subdivision one or two”, an exact mirror of Family Court Act § 340.1 (5) — the expression of legislative unwillingness to tolerate scheduling or calendar difficulties as excuses for delaying consideration of juvenile cases.
In the end, the legislative architecture of article 3 is stark and plain. As the Court of Appeals first noted in Frank C., "[a]mong the most important aspects of the [new article 3] procedural rules were the various provisions establishing specific time limitations to govern each stage of the proceeding from arrest through final disposition [citations omitted]. The stated purpose of those provisions was to assure swift and certain adjudication at all phases of the delinquency proceeding”. (Matter of Frank C., supra, at 413 [emphasis added].) Moreover, Frank C. pointed out that "the Legislature enacted the statute despite concerns expressed by some regarding the undue burden strict time limitations would impose on the Family Court system.” (Supra, at 414.) In talking about Family Court Act § 340.1, Frank C. underlined that "the statute’s specific and mandatory language, as well as its precise deadlines and clear legislative history, lead to the conclusion that the Legislature did not intend to leave the sanction for noncompliance to the Family Court’s discretion.” (Supra, at 414.) Finally, the Court of Appeals insisted that "[Requests for adjournments should always be considered in light of the statutory standards, and the court’s conclusions should be stated briefly on the record so that the propriety of various delays can later be assessed by a reviewing court.” (Supra, at 414-415 [emphasis added].) In Frank C., in sum, the court found that the "source of delay is not controlling and that dismissal is required whenever the statutory requirements for commencing a fact-finding hearing are not satisfied.” (Supra, at 410.)
The court expatiated on this reasoning in Randy K. (supra). It reminded us that "delinquency proceedings are civil in nature, the purpose, in part, being the rehabilitation of the child through consideration of the needs and interest of the child. * * * The speedy hearing provision furthers this purpose by assuring swift and certain determinations in juvenile
*735 delinquency proceedings.” (Supra, 77 NY2d, at 402.) Creating exceptions premised on the blamelessness of prosecution or the voluntary disobedience of the juvenile would amount to "nothing less than an impermissible judicial rewriting of the statute.” (Matter of Randy K., supra, at 404.) "Providing for an automatic retroactive adjournment based solely upon the failure of a juvenile to appear for a hearing * * * would in no way advance the aims of ensuring a swift and certain determination of the proceeding and supervision of the juvenile.”[3] (Supra, at 404 [emphasis added].) Most recently, the Court of Appeals in Matter of Detrece H. (78 NY2d 107, supra) reiterated its understanding that Family Court Act article 3 must be strictly construed and courts must eschew any diminution of the "substantive protections for the individual accused of juvenile delinquency.” (Supra, at 111.) Detrece H. stands for the proposition that assiduous attention to the letter of statutory commands is generally required by article 3, not only as those commands concern speedy trial.
With the above cases as guides, it is impossible for this court to grant petitioner’s demand that it establish, ex post facto, good cause or special circumstances for any and all of the adjournments that exceeded 50 days. The record, as noted above, is barren of evidence that time limits were waived by respondent. It is also unfortunately barren of concrete support for the notion that the court and presentment agency were keeping Family Court Act § 350.1 strictures in mind in establishing a scheduling scheme. It is not so strange that this matter became becalmed in a procedural Bermuda Triangle, since the parties were navigating without the refined compass *736 provided by Randy K. (supra) and then Detrece H. (supra). Nonetheless, understandable as the lapse may be, it is not curable. As noted above, whether probation or mental health scheduling problems might constitute good cause or special circumstances need not be reached here,[4] because the threshold requisites for invoking Family Court Act § 350.1 (2) and Family Court Act § 350.1 (5) when unmet — i.e., neither waivers nor statements on the record established sufficient reason to exceed the 50 days. Consequently, the proceeding must be dismissed.

. Like all beliefs, this requires an act of faith in the face of a gritty, unpleasant reality. It is hard to remember, when the court confronts a large boy of 15, charged with crack sale and possession of a gun, that he is indeed still a "child”, at least for another several years. He is therefore presumptively reformable, if adults will set the right example by rigorously, consistently and fairly discharging their responsibilities (here statutory ones). The Legislature might want to revisit the wisdom of expecting miracles of redemption from an underfinanced, underserviced Family Court at the point where problem behavior has already become law-breaking.

. This is a question which will inevitably demand attention from the judiciary. Given Randy K. ’s reasoning (Matter of Randy K., 77 NY2d 398), it is possible that the Court of Appeals will rule that probation scheduling problems are never properly chargeable to respondent, assuming respondent has been cooperative. Ultimately, the Legislature will have to confront and resolve the tension between demands for quick processing of juvenile proceedings and its continued unwillingness to spend money for the resources necessary for Judges to make expeditious but informed decisions whether young people need treatment, supervision or confinement.

. The reasoning of both majority and dissent in Randy K. deserves particular attention from the Legislature. It is true, as the majority points out, that no real effort was made to execute on warrants for juveniles when the passage of time between arraignment and fact finding could be charged to the respondents. And, since time is really of the essence, it is incumbent on the adults in the system to act before the juvenile outgrows his or her childhood. In fact, since Randy K., with the now-common 30-day warrant reports, it does seem (albeit anecdotally) that there are more and successful attempts to find and bring in youngsters. On the other hand, as the dissent in Randy K. noted, not charging time against an intentionally absent juvenile sends a perverse message — evade process long enough and the court will lose its power over you. Notwithstanding more attention by presentment agency and warrant squad to their obligations, this message is likely to prevail, because there are simply too many kids committing crimes and too few criminal justice resources to handle them. Again, the Legislature may have unrealistic expectations of the Family Court and a too sanguine view of the malleability and vulnerability of modern, urban youth.

. But see footnote 2 infra.